# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BROWN/GARRETT, Minors.

UNPUBLISHED
August 30, 2018

No. 342035
Wayne Circuit Court
Family Division
LC No. 16-523391-NA

Before: CAMERON, P.J., and RONAYNE KRAUSE and TUKEL, JJ.

PER CURIAM.

Respondent-mother appeals the trial court's order terminating her parental rights to 10 minor children, APB, CMB II, CLMB, NGB, DSG, JBG, JKG, SDG, TSG, and TYG, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist); MCL 712A.19b(3)(c)(*ii*) (failure to rectify other conditions); MCL 712A.19b(3)(g) (failure to provide proper care and custody); and MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent).[1] On appeal, respondent-mother challenges the trial court's findings regarding the statutory grounds for termination and best interests factors. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On September 12, 2016, the Department of Health and Human Services (DHHS) filed a petition against respondent-mother alleging physical neglect, physical abuse, domestic violence, and an unfit home. After a preliminary hearing, the referee authorized the petition and removed all 10 children from respondent-mother's care. The children were initially placed with a maternal aunt. The referee held a bench trial on November 18, 2016, and respondent-mother was not present. At the trial's conclusion, the referee found that respondent-mother's home was unsuitable for the children; that CMB, the legal father of three of the children, had been abusing the children; and that respondent-mother had known of this abuse. The referee ordered that the children be made temporary court wards.

---

[1] The trial court also terminated the parental rights of CMB, the legal father of three of respondent-mother's children; however, CMB was not located, despite reasonable efforts, and he has not appealed. The legal father of six of the children was deceased at the time of the proceedings. The putative father of the tenth child was not located, despite reasonable efforts.

-1-

On December 1, 2016, at the first dispositional review hearing, which respondent-mother again did not attend, the referee ordered that respondent-mother complete parenting classes, individual therapy, psychological evaluation, and psychiatric evaluation (if necessary). The referee further ordered that respondent-mother maintain suitable housing, obtain a source of income, stay in contact with the DHHS worker, and attend all court hearings.

On March 15, 2017, the referee held a dispositional review planning hearing. Respondent-mother was again not present. In fact, DHHS had had no contact with respondent-mother between the December 2016 hearing and February 14, 2017. Thereafter, respondent-mother participated in some services and visited her children; however, she stopped participating in services and visits and had no contact with DHHS after approximately three weeks.

On June 21, 2017, the referee held a combined dispositional review and permanency planning hearing, which respondent-mother attended. The children remained with the maternal aunt. Respondent-mother had been terminated from all services early due to noncompliance, despite being re-referred after the March 15 hearing, and she had completed none of the referee-ordered requirements. Respondent-mother's appearance at this hearing was the first time that the foster care worker had seen or heard from respondent-mother since March 28, 2017.

On October 4, 2017, DHHS filed a supplemental petition asking the court to terminate respondent-mother's parental rights. By October 11, 2017, the children had been split into various placements: APB, CMB II, CLMB, and NGB were placed with an adoptive foster care home; SDG, TSG, and TYG were placed with an aunt; and DSG, JBG, and JKG were placed with a cousin. The referee conducted a bench trial on December 6, 2017, and recommended that statutory grounds existed for termination and that termination was in the children's best interests. The trial court adopted the referee's findings and recommendations.

## II. STATUTORY GROUNDS FOR TERMINATION

Respondent-mother argues on appeal that the trial court clearly erred by finding that termination was proper under MCL 712A.19b(3)(c)(*i*)-(*ii*), (g), and (j). We disagree.

## A. STANDARD OF REVIEW

This Court reviews for clear error the trial court's determination that there were statutory grounds for termination. *In re Fried*, 266 Mich App 535, 541-542; 702 NW2d 192 (2005). Clear error occurs when, although there is evidence supporting the trial court's decision, the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *In re Cornet*, 422 Mich 274, 278; 373 NW2d 536 (1985) (quotation marks and citations omitted). The trial court's decision must be more than maybe or probably wrong. *In re Sours Minors*, 459 Mich 624, 633; 593 NW2d 520 (1999) (quotation marks and citations omitted). The reviewing court must not "substitute[] its judgment for that of the trial court," see *In re Hall*, 483 Mich 1031, 1031; 765 NW2d 613 (2009), and should consider the trial court's special opportunity to evaluate the credibility of witnesses, MCR 2.613(C); *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

## B. DISCUSSION

To terminate parental rights, a trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination listed within MCL 712A.19b has been met. *In re McIntyre*, 192 Mich App 47, 50; 480 NW2d 293 (1991). In this case, the trial court terminated respondent-mother's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j), which, at the time of the termination proceeding, provided:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

### 1. MCL 712A.19b(3)(c)(*i*)

The trial court did not clearly err by finding that termination was proper under MCL 712A.19b(3)(c)(*i*).

Under MCL 712A.19b(3)(c)(*i*), termination is proper when "the totality of the evidence" supports that the respondent-parent did not accomplish "any meaningful change in the conditions" that led to adjudication. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). Additionally, the conditions must not be able to be rectified within a reasonable time. This includes both how long it will take for the parent to improve conditions and how long the children can wait for the parent's improvement. *In re Dahms*, 187 Mich App 644, 648; 468 NW2d 315 (1991).

TYG testified that, prior to the court taking jurisdiction, CMB had hit her finger with a metal pole, breaking her finger and requiring surgery; that CMB hit her face with his hands on more than one occasion; that CMB hit all of the other children, except for his own; and that CMB hit JBG with a phone charger, bruising his back. Although respondent-mother initially testified that she had had no contact with CMB since the case's inception, she later acknowledged that she had had an altercation with him in March 2017.

Additionally, TYG testified that, while living with respondent-mother, there had been a period where there was no running water, and the basement had been flooded for more than a month. At the termination trial, respondent-mother acknowledged that her current residence was too small for all of the children to stay with her. One of the foster care workers testified that she had been unable to obtain access to visit this residence, and she also believed that the residence could not support 10 children. Although respondent-mother testified that this residence was temporary and that she would be moving to a new home within a week, she never informed the foster care worker about this new home. Furthermore, although respondent-mother stated that she had employment as a housekeeper and that she worked approximately 25 hours per week at $10 per hour, she had never provided verification of employment. Moreover, with the exception of parenting classes, respondent-mother failed to complete any of the ordered services.

Finally, there was no indication that these conditions would be rectified within a reasonable time. Approximately 15 months had passed since the inception of the case, and the only services that respondent-mother had completed were parenting classes. She had only begun participating in individual therapy in October 2017, over a year after the case began. Furthermore, respondent-mother had been terminated from services on numerous occasions. Additionally, the foster care worker testified that she did not believe that respondent-mother's current housing and employment could be rectified within a reasonable time. Finally, there was evidence indicating that respondent-mother continued to have contact with CMB long after this case began. The totality of the evidence therefore supports a finding that respondent-mother did not accomplish "any meaningful change in the conditions" that led to adjudication. See *Williams*, 286 Mich App at 272.

### 2. MCL 712A.19b(3)(c)(*ii*)

The trial court did not clearly err by finding that termination was proper under MCL 712A.19b(3)(c)(*ii*).

Under MCL 712A.19b(3)(c)(*ii*), a trial court may terminate parental rights when "[o]ther conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by

the parent . . . , and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age."

In December 2016, the referee ordered respondent-mother to complete parenting classes, individual therapy, psychological evaluation, and psychiatric evaluation (if necessary). She further ordered that respondent-mother obtain suitable housing and a source of income, that she stay in contact with the DHHS worker, and that she attend all court hearings. However, respondent-mother failed to satisfy these conditions throughout the coming months. She missed numerous court dates; there were extended periods of time during which her whereabouts were completely unknown and where she was not in contact with DHHS; and she was consistently terminated from the services referred and re-referred to her. Additionally, by the March 2017 hearing, she had completely stopped participating in services; she only began participating in individual therapy in October 2017; and she only completed parenting classes as of November 29, 2017, days before the termination trial.

Furthermore, one of the foster care workers provided extensive testimony establishing that respondent-mother barely visited with her children throughout the majority of the case proceedings, and the foster care worker for APB, CMB II, CLMB, and NGB testified that respondent-mother had visited these children at most three times since August 2017. This evidence demonstrates that respondent-mother "received recommendations to rectify [these] conditions," and that "there [was] no reasonable likelihood that the conditions w[ould] be rectified within a reasonable time." MCL 712A.19b(3)(c)(*ii*).

### 3. MCL 712A.19b(3)(g)

The trial court did not clearly err by finding that termination was proper under MCL 712A.19b(3)(g).

Under MCL 712A.19b(3)(g), a trial court may terminate parental rights when "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age."[2]

---

[2] MCL 712A.19b(3)(g) has been amended, effective June 12, 2018. See 2018 PA 58. Under the version of the statute in effect at the time of these proceedings, termination is appropriate if "[t]he parent, *without regard to intent*, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g) (emphasis added). Under the new version of the statute, termination is appropriate if "[t]he parent, *although, in the court's discretion, financially able to do so*, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g) as amended by 2018 PA 58 (emphasis added).

In this case, the evidence supported the finding that respondent-mother failed to provide proper care and custody and that there was no reasonable expectation that she would be able to do so within a reasonable time. As previously discussed, prior to the court taking jurisdiction, the children's living conditions were very poor, and there was doubt regarding whether respondent-mother had a home or a job sufficient to provide proper care to all 10 children, giving cause to find that she would be unable to meet her children's daily needs.

Moreover, throughout the proceedings, respondent-mother showed disinterest, missing numerous hearings and court appearances and failing to participate in or complete the ordered services. There were also extended periods of time during which her whereabouts were completely unknown and she was not in contact with DHHS. Such evidence supports a finding that respondent-mother "fail[ed] to provide proper care . . . for the child[ren]" and that she would be unable to do so within a reasonable time. MCL 712A.19b(3)(g).

### 4. MCL 712A.19b(3)(j)

Finally, the trial court did not clearly err by finding that termination was proper under MCL 712A.19b(3)(j).

Under MCL 712A.19b(3)(j), a trial court may terminate parental rights when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent."

In this case, the evidence supports the finding that there was a reasonable likelihood that the children would be harmed if returned to respondent-mother. As previously discussed, prior to the court taking jurisdiction, there had been instances of physical abuse perpetrated by CMB against several of the children. The trial court determined that respondent-mother failed to protect the children from this abuse. While respondent-mother was referred services to address this issue, she failed to complete these services. Respondent-mother acknowledged that she had had contact with CMB in March 2017 during the pendency of the proceedings, and on that occasion, there was a physical altercation leading to her arrest. Any contact between respondent-mother and CMB would present a reasonable likelihood of harm given the history of abuse.

Moreover, as previously discussed, respondent-mother had not verified her alleged employment, did not work full-time, and did not appear financially able to provide proper care for 10 children. Her ability to provide a safe and proper home for all 10 children was in doubt, supporting a finding that respondent-mother would be unable to meet the daily needs of her children. This evidence supported a finding that there was a reasonable likelihood that the children would suffer harm if returned to respondent-mother's care. MCL 712A.19b(3)(j).

After reviewing the record, we are not "left with the definite and firm conviction that a mistake has been committed." See *Cornet*, 422 Mich at 278. Therefore, the trial court did not clearly err by finding that termination was proper under MCL 712A.19b(3)(c)(*i*)-(*ii*), (g), and (j).

### III. BEST INTERESTS

Respondent-mother argues that the trial court clearly erred by finding that termination was in the children's best interests. We disagree.

### A. STANDARD OF REVIEW

The trial court's decision regarding the child's best interests is reviewed for clear error. *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). Clear error occurs when, although there is evidence supporting the trial court's decision, the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Cornet*, 422 Mich at 278. The trial court's decision must be more than maybe or probably wrong. *Sours Minors*, 459 Mich at 633. The reviewing court may not "substitute its judgment for that of the trial court," *Hall*, 483 Mich at 1031, and the reviewing court should consider the trial court's special opportunity to evaluate the credibility of witnesses, MCR 2.613(C); *Miller*, 433 Mich at 337.

### B. DISCUSSION

The trial court did not clearly err by finding that termination of respondent-mother's parental rights was in the children's best interests.

Once the petitioner has established a statutory ground for termination by clear and convincing evidence, the trial court must order termination of parental rights if the court also finds that termination is in the best interests of the child. MCL 712A.19b(5); *Trejo*, 462 Mich at 353. Whether termination is in a child's best interests must be proven by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). When deciding whether termination is in the children's best interests, the trial court may consider "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). It is also proper to consider evidence that the children are not safe with the parent, that they are thriving in foster care, and that the foster care home can provide stability and permanency. *In re VanDalen*, 293 Mich App 120, 141; 809 NW2d 412 (2011).

In this case, the trial court found that termination was in the best interests of the children because they were thriving in their pre-adoptive homes, their needs were being met, they had stability, they were not being abused, and the placement homes offered long-term care, something that respondent-mother was unable to do.

One of the foster care workers testified that she believed termination of parental rights was in the best interests of SDG, TSG, TYG, DSG, JBG, and JKG. She stated that both the aunt and cousin, who were each caring for some of these children, were willing to provide permanent homes for their respective children. The foster care worker believed that both could provide safe and stable homes, and both were in the process of obtaining the proper licensing. Furthermore, the other foster care worker testified that termination of parental rights was in the other children's best interests. She testified that APB, CMB II, CLMB, and NGB were doing well in their pre-adoptive home, that all of their needs were being met, and that the home was safe and stable.

The children had stability and permanency in their respective placement homes, and their placement homes provided advantages over respondent-mother's home. See *Olive/Metts*, 297 Mich App at 41-42; *VanDalen*, 293 Mich App at 141. Additionally, the children were thriving in their placement homes, weighing in favor of termination. See *VanDalen*, 293 Mich App at 141. Moreover, as discussed previously, there was evidence that the children would not be safe with respondent-mother, given her history with CMB and continued contact with him, as well as her lingering inability to provide a home and proper care for her children and meet their daily needs, weighing in favor of termination. See *id.*

Moreover, one of the foster care workers spoke to TSG, TYG, JKG, and SDG about respondent-mother's rights being terminated. TSG believed that respondent-mother was never going to change, JKG said that he loved respondent-mother but wanted a better life, and TYG, SDG, and DSG refused to say anything about termination. The foster care worker did state that respondent-mother had a bond with the children, but the parental bond is only one factor and is not dispositive. *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

We are not "left with the definite and firm conviction that a mistake has been committed." *Cornet*, 422 Mich at 278. There was adequate record evidence supporting a determination that termination was in the children's best interests.

Affirmed.

/s/ Thomas C. Cameron
/s/ Amy Ronayne Krause
/s/ Jonathan Tukel

-8-